Counsel, you may proceed. Thank you, Your Honors. Good morning. My name is Evangeline Abriel, and together with my co-counsel, Carla de la Torre, I represent Mr. Osnaya-Alvarez. This case is before you because the immigration judge did not give Mr. Osnaya a fair hearing and because the Board of Immigration Appeals applied incorrect standards when it reviewed his case, resulting in a removal order for a father of five U.S. citizen children who had lived in the United States for 25 years. I will argue that the Board's decision should be reversed for two reasons. First, the immigration judge's failure to give a fair hearing. And second, the Board's application of incorrect standards when it determined that Mr. Osnaya had interrupted his continuous presence and had a controlled substance offense. Was the due process claim that you're making exhausted? Yes, Your Honor. If we look at the record, it's quite straightforward. The immigration judge based his decision on his belief that Mr. Osnaya had a controlled substance offense. He did not mention the simple battery or the the simple battery or the interruption of physical presence. Thus, when Mr. Osnaya exhausts due process, he does it in the context of the controlled substance offense. And if we look at page 7 of the record, about 7 to 8 lines down, and then again at lines 13 to 14, we can see that he does this quite clearly. He says that the immigration judge's drastic decision to deport him was because of a drug case, but that he, Mr. Osnaya, was set free and given probation of 18 months. So under this is an artful, but under this Court's jurisprudence and argument, it is enough. In Eichemann, the pro se respondent was requesting adjustment of status, and the immigration judge told him that he had to have his wife come to testify at the hearing and otherwise could not get adjustment of status. Mr. Eichemann, on appeal, stated that the complaint about the immigration judge's imposition of this requirement on him, he didn't mention the technical term due process, but this Court found that that was enough to exhaust his due process claim based on the judge's failure to advise him and develop the record. And if we look at what Mr. Osnaya did, it's strikingly similar. In both cases, the respondent is raising the conduct of the immigration judge that prevented him from presenting his case fully. And, Your Honor, if we look at the record, we can see that the immigration judge is trying to develop the record and to ask and to advise Mr. Osnaya. He doesn't tell Mr. Osnaya anything, really. He doesn't tell him what the requirements are for cancellation. He doesn't tell him that he needs to get those criminal records to see if he really has a conviction. He doesn't tell him that he needs to get his immigration records to see if he has the kind of voluntary departure that would interrupt his continuous presence. He also doesn't develop the record. So there's testimony in the record that cries out for some sort of a clarifying question. Well, with respect to the voluntary, with respect to the 10 years' continuous presence, didn't he admit that he departed voluntarily? Yes, Your Honor. In 2008? He used the term voluntary. I'm sorry, Your Honor. Did you finish your question?  Yes, Your Honor. He does use the term voluntary, but he doesn't – there's nothing in the record that indicates that he understood and agreed to the terms of the voluntary departure. Under this Court's jurisprudence, a voluntary departure cannot interrupt continuous presence unless there's evidence in the record that the respondent understood and agreed to its terms. And in 2008, when Mr. Osnaya left, he had a strong claim for relief. He'd already been in the United States for 10 years, closer to 20 years, and he already had five U.S. citizen children. So he was giving up a great deal by taking voluntary departure in 2008. And there's nothing in the record that indicates that he was advised of that or that he understood that. There's no – Your argument in your brief has to do with you say that his 2008 departure, you know, may not have been voluntary. But that's a fairly diluted statement right there. What standard are we benchmarking the determination against? Your Honor, the board – we're arguing that the board stated and incorrect – used an incorrect standard of law when it reviewed the finding on – when it said that Mr. Osnaya had interrupted voluntary departure, and that would be reviewed de novo. Even if you're – even if it's an application of the law to Mr. Osnaya's case, this Court in G held that mixed questions of law and fact are reviewed de novo as well. In terms of the immigration judge not to – And what – so let's just assume, to follow that train of thought, that it is de novo in your view, if it were. What's the evidence that shows that it's not voluntary? Your Honor, it's not so much the evidence that shows that it's not voluntary, but that there's no – this Court's ruling is that the record must contain evidence to show that it is voluntary. And the record does not contain that evidence. So even though – so we're supposed to disregard the admissions of your client? Well, they're admissions only to – they're not really admissions, Your Honor. Well, statements. Let's call them statements. Yes, Your Honor. They're not sufficient. Under this Court's jurisprudence in – under this Court's jurisprudence in Ibarra-Flores and under the Board's decision in Aviles-Nava, they're just not enough to show that he understood the terms of his voluntary departure, particularly in a case like this where he had – he was giving up a great deal. And this case – to this extent, the case is different from Gutierrez v. Mukasey, because in that case, the Respondent did not have a claim for relief at the time of his voluntary departure. He was also a cancellation application, but – cancellation applicant, but he had not acquired the 10 years at the time of his voluntary departure. So you don't have the same issue of whether someone understood what they were giving up. In addition, Mr. Gutierrez was asked twice directly during his later removal proceeding whether he had been advised that he had the opportunity to see an immigration judge, and he answered yes – he answered yes directly on – on – in his – in the removal proceeding to that. Your Honor, I would like to reserve the rest of the time for my co-counsel and for rebuttal unless there are further questions. Roberts. You may do so, counsel.  Thank you, Your Honors. Counsel, you may proceed. Your Honors, and may it please the Court, my name is Karla de la Torre, counsel for the Petitioner, Mr. Osanaya Alvarez. In addition to the errors my co-counsel has spoken about, I will address an additional error made by the Board regarding the Board's mischaracterization of Mr. Osanaya's battery conviction. We ask that this Court reverse and remand the BIA decision because the BIA erred in its decision by characterizing the battery conviction as a conviction for domestic violence and as one involving moral turpitude. The Board first erred in stating that the battery conviction was a domestic violence offense under California Penal Code Section 273.5. In fact, in its decision, the Board fails to ever state that the conviction is actually under California Penal Code Section 242. This is so despite the fact that there is an official record on page 106 of the record stating that the conviction is under Section 242. This results in the Board's decision that Mr. Osanaya is ineligible for cancellation of removal. In part. Correct, Your Honor. There's also the drug conviction. This Court cannot take his testimony over an official record. Mr. Osanaya was unrepresented before the immigration judge, and his statements are not dispositive. The only evidence of the conviction this Court may use is the FBI rap sheet. To adopt the government's approach would require us to look at conduct versus conviction. Moreover, this conviction came before the 1996 Immigrant Responsibility Act. Under this act, domestic violence convictions entered after September 30th of 1996 make some undocumented individuals deportable. However, the act is not retroactive and does not apply to crimes committed before the date, convictions before the date. Here, Mr. Osanaya's battery conviction occurred in 1995. The 1996 act does not apply to him. Turning to the second error made by the Board, the Board stated that Mr. Osanaya's battery conviction is not one categorically involving moral turpitude, and therefore it is not a bar to cancellation of removal. Under this Court's jurisprudence, simple battery is not categorically a crime involving moral turpitude unless there are additional aggravating circumstances to the statutory offense. The only way this Court can look past the record of conviction to add additional aggravating elements is if it can apply the modified categorical approach. The modified categorical approach can only be applied if the statute is divisible, and this was found in this Court's ruling in Rendon of this year. A statute is divisible if it lists multiple alternative elements, thus creating several different crimes. What must be divisible are the elements, not the mode or means of achieving the element. If the jury did not come to an agreement on the modes or means, then the statute is not divisible. Here, in order to establish the offense of battery, the California jury instructions state that the jury can find battery if they find that a person used either force or violence upon the person of another. They need not come to an agreement on the element, simply the modes or means. Thus, because there is no divisibility, the government cannot go past the record of conviction to establish a missing element of the crime. Lastly, the three BIA errors my co-counsel and I spoke about are emblematic of the way in which the Board disregarded Ms. Rosania's appeal and did not give it fair consideration. This resulted in prejudice and the Board's ultimate denial of cancellation of removal. Counsel, even if we agree with you on the battery point, what about the meth conviction? Your Honor, the methamphetamine conviction was a conviction that the immigration judge failed to advise our client on regarding, as my co-counsel spoke about, on the getting the records to see whether or not it fell under the Lujan Armendariz exception, which would have made him eligible for cancellation of removal. Because of the high stakes, the Board should be held to the correct application of the law. Their failure to do so in this case means that Ms. Rosania will have to say goodbye to his five U.S. children. One of his children has asthma and the other has hypertension, and these children have written letters of support where one states on page 11 of the record, I can't do it no more. I'm just in so much pain. I wish you were here. Mr. Rosania has lived in the U.S. for 20 years and has established a life and family here. The Board should give Ms. Rosania's case the proper attention and consideration it deserves. For these reasons, we ask that the Court reverse and remand the BIA decision. Thank you. Thank you, Counsel. We'll hear from the State. Mr. Justice. May it please the Court. My name is Nicholas Harling, and I represent the Attorney General of the United States. Substantial evidence supports the Board's denial of cancellation of removal. In the Government's brief to the Court, the Government defended the Board's decision on two independent grounds. Mr. Rosania's inability to establish 10 years of continuous physical presence and also his controlled substance conviction. Does the Government concede the battery point? As noted in the Government's brief to the Court in the final page of the brief and a footnote, the Government recognizes that it's really unclear the basis upon which the Board made that determination.  substantial evidence does not support the Board's determination regarding voluntary departure as well as the controlled substance conviction, the appropriate thing to do would be to remand the case back to the Board to provide further explanation as to why it thought that the 242 conviction was a disqualifying one. Well, wouldn't the meth conviction alone be enough or not?  The meth conviction alone would be enough. So then why would we send it back if we agree with counsel on the battery issue? Your Honor, you would only send it back to the Board if you disagreed with my arguments regarding the voluntary departure and the controlled substance conviction. Right. Okay. That wouldn't make it necessary. Because if the case, if you don't agree with me on my two independent points, the case has to be random back anyways because there was never a hardship determination and there was never a determination made whether he merits cancellation in, as a matter of discretion. I thought the IJA made the determination that he did not merit cancellation as a matter of discretion. Well, Your Honor, I'm not familiar with that. If that had been the case, I would have argued that there's no jurisdiction in the matter. I don't think the Board did. But the Board didn't pick up on it either. The Board did, which may make the difference. But the Government's more than happy and more than confident to stand on the 10 years continuous presence determination as well as the controlled substance conviction. So what is the Government arguing, then, that we should deny and remand or simply remand? What are you asking this Court to do? The Government's argument is the Court should deny the petition for review because he, Mr. As the Board noted, Mr. Esnaya was unable to establish 10 years of continuous presence. That basis alone merits or justifies the denial of the petition for review. Alternatively, if the Court agrees with the Government's argument that the controlled substance conviction was disqualifying, that basis also alone justifies denying the petition for review. Because to be eligible for cancellation or removal, he has to establish 10 years continuous presence. He has to establish that he has no disqualifying convictions. He has to establish that he has good moral character, that an immediate U.S. citizen relative. So there's no need to remand unless there's a grant. Is that what you're saying? There's no reason to remand unless the Court rejects my arguments that, in fact, rejects the Government's arguments that he did not establish 10 years continuous presence and does not have the disqualifying controlled substance conviction. So on the voluntary departure, we have his testimony that he signed the form and left the country. Did we have the form in the record? The form is not in the record, Your Honor. And that's not a problem in this case. Of course, it would be better if it were in the record. But because this is not dealing with whether he is removable, the question is whether he is eligible for relief. Right. And it is his burden. The absence of the form is not determinative. Well, aside from his admission, is there anything else in the record? No, Your Honor, just his admission. Just his admission. If there are no further questions from the panel. No further questions. Thank you, counsel. Thank you. Do we have some rebuttal time, Ms. Abram? Thank you, Your Honor. A couple of points on rebuttal. Concerning the methamphetamine charge, there are two problems with this. And the first is that the judge's violation of due process in not advising Mr. Osnaya and not developing the record. And we can see at various points in the record that Mr. Osnaya is trying desperately to tell the judge that he doesn't have a conviction. You know, he says, I completed my program. I did everything they asked me. I'm having trouble getting the documents. I can't get a phone call. If I can get a phone call, I can get this. I can get the documentation. But the immigration judge never tells him, you know, you need to get hold of this criminal record so that you can determine whether you have a conviction or not. Well, he did admit the conviction. Your Honor, we can't look at that in isolation. He also said repeatedly that he pled guilty under a scheme that would dismiss the charges, and he says that repeatedly throughout. Right. But then, as I understand what he said at the hearing, he said he was given a chance to finish the program, and he didn't finish the program, and subsequently did the jail time for the meth conviction, right? Well, Your Honor, to the contrary, he says he did finish the program. There's something about community service that he said he didn't do, but he said he finished his program. And we can't tell from this sparse record what happened with that methamphetamine charge. We can't tell whether he was taken out of the scheme that would have allowed the dismissal of charges or not. And that's the problem with this case, that the immigration judge has not developed the record enough to make a record that can be determined. The other problem with the methamphetamine charge is that the Board of Immigration Appeals applied an incorrect standard, so they never really reviewed it. They made the standard statement that a methamphetamine debt conviction of a controlled substance bars cancellation, but they omitted the critical exception under Lujan Armendariz and Nunez-Alvarez that offenses expunged under State counterpart to the Federal First Defenders Act, where the conviction was before June 14th, 2011. Do not have immigration consequences. So the Board never reviews his testimony. There's no mention in the Board's decision of his testimony that he pled guilty under a State counterpart. And that's clearly relevant. He testifies to it over and over again through the course of the proceedings. The immigration – on to a second point, Your Honor. The immigration judge did not make a discretionary finding on cancellation. It – he made one on voluntary departure, because Mr. Esmaya had already had. He – or the immigration judge thought he had a voluntary departure. You're right on that. And, Your Honor, the third point I wanted to make on rebuttal is the standard of review. So this case should be reviewed de novo. All we're talking about here are both questions of law and the Board's application of law to facts. And those are both reviewed de novo under this Court's jurisprudence. We're not talking about findings of fact per se. But even if we review for substantial evidence, this record is not supported by – the Board's decision is not supported by substantial evidence because they haven't looked at all the evidence. There are big gaps. They never mention the lack of evidence about whether Mr. Esmaya understood and accepted the terms of his voluntary departure. They never mention his confused testimony on that point. And they never mention his testimony that he pled guilty under a scheme that would dismiss his drug charges. So because for all of those reasons, Your Honor, we ask that the Court reverse the Board's decision, and we thank the Court for its attention. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown